Filed 7/30/25  P. v. Hernandez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B338131 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA019906) |
| v. | |
| JOSE HERNANDEZ III, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rob B. Villeza, Judge.  Reversed and remanded.

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Louis W. Karlin, Deputy Attorneys General for Plaintiff and Respondent.

Thirty-two years ago, defendant and appellant Jose Hernandez III committed terrible gang-related crimes as a youthful offender. He shot and killed two people—one execution-style—and attempted to murder a third. Much more recently, however, after Hernandez had served decades of the life without possibility of parole prison sentence he received, renounced the gang (at significant personal cost), and committed himself to rehabilitation, the Los Angeles County District Attorney petitioned to reduce Hernandez's sentence to a 30 years to life term that would keep him in custody but give him a chance to make a case for release to the Parole Board. Despite a statutory presumption favoring the grant of relief sought by the People, the trial court denied the petition and concluded Hernandez, now age 52, still poses an unreasonable risk of committing a "super strike" offense.[1]

---

[1] "The felonies commonly referred to as super strikes are (1) a ' "sexually violent offense," ' as defined in Welfare & Institutions Code, section 6600, subdivision (b); (2) oral copulation or sodomy, or sexual penetration of a child under 14 years of age and more than 10 years younger than the defendant, as defined in Penal Code sections 286, 288a and 289; (3) a lewd or lascivious act involving a child under 14 years of age, in violation of [Penal Code] section 288; (4) any homicide offense, including attempted homicide, as defined in [Penal Code] sections 187 to 191.5; (5) solicitation to commit murder, as defined in [Penal Code] section 653f; (6) assault with a machine gun on a peace officer or firefighter, as defined in [Penal Code] section 245, subdivision (d)(3); (7) possession of a weapon of mass destruction, as defined in [Penal Code] section 11418, subdivision (a)(1); and (8) any serious and/or violent felony offense punishable in California by life imprisonment or death." (*People v. Valencia* (2017) 3 Cal.5th 347, 351, fn. 3.)

Hernandez contends that the trial court's denial of relief was an abuse of discretion. He argues the court failed to apply the statutory presumption in favor of recall and resentencing and he maintains there is insufficient evidence he would pose an unreasonable risk to public safety if and when ultimately released on parole. Hernandez believes, correctly, that the trial court solely relied on the immutable circumstances of the commitment offenses to deny relief.

Hernandez's crimes of conviction were concededly heinous, but we agree with the District Attorney (and with the Legislature) that relief must be available even for heinous crimes in cases like this one that involve a truly extraordinary decades-long record of rehabilitation and public service that demonstrate there is no unreasonable risk Hernandez will commit a "super strike" crime if and when Hernandez is ever released on parole. Hernandez is over the age of 50, he long ago renounced his gang membership, he has three decades of sobriety, he has no criminal history other than the offenses of conviction, and he has *zero* disciplinary history in prison. Hernandez has accepted responsibility for his crimes, he currently suffers from "end stage liver disease," and the Department of Corrections and Rehabilitation has calculated his risk of reoffending score as a "one"—the lowest score possible.

We hold the trial court's denial of the District Attorney's request to recall Hernandez's sentence was an abuse of its discretion in light of the statutory presumption favoring relief and Hernandez's extraordinary record of rehabilitation—one that prompted a 24-year veteran of the District Attorney's office who worked in the hardcore gang crimes unit to remark that it was the best he had ever seen.

3

# FACTS AND PROCEDURAL HISTORY

### A.      *Facts*[2]

In the evening on August 10, 1993, Hernandez and Robert Cota were riding a bicycle when they encountered Raphael Torres.  Hernandez was carrying a firearm; Torres was unarmed.  Hernandez and Torres exchanged gang challenges and insults.  Hernandez got off the bicycle, pulled out the gun, and shot and killed Torres.  Hernandez and Cota left on the bicycle.

A few hours later, Hernandez and Cota were riding a bicycle again.  Cota was pedaling and Hernandez was sitting on the handlebars.  They stopped a car that Alberto Gonzalez was driving.  Julio Silva was a passenger in the car.  Hernandez dismounted the bicycle and approached the front passenger area of the vehicle where Silva was seated.  Hernandez asked Silva where he was from—i.e., which gang he belonged to.  Silva was not a gang member.  He said he was from Rosemead.  Hernandez ordered Silva out of the car and made him kneel on the ground.  He told Silva he was going to die and shot him in the head.  Gonzalez charged at Hernandez and struggled with him for

---

[2] The transcripts of Hernandez's trial are not contained in the record.  For background at the 1172.1 hearing, the trial court simply relied on the Court of Appeal's opinion from the direct appeal, the People's petition for recall and resentencing pursuant to section 1172.1, and Hernandez's memorandum in support of the petition.  Our recitation of the facts relies on these same sources, and the superior court's summary of them.  The facts relating to the crimes for which Hernandez was convicted are not contested in this appeal.

control of the gun. Cota joined the fight, kicking Gonzalez in the stomach repeatedly. The gun discharged and struck Gonzalez in the chest. Hernandez shot Gonzalez two more times. Hernandez and Cota drove the car from the scene and later abandoned it. Gonzalez survived the shooting.

Hernandez admitted to police that he was involved in the shootings but said he was under the influence of drugs and not thinking clearly. He said that he shot Silva and Gonzalez after Gonzalez nearly hit him with the car. Hernandez said that Silva and Gonzalez rushed at him and Cota and cursed at them. Silva began fighting Hernandez, so Hernandez shot him.

Hernandez was 21 years old when he committed the crimes.

## B. *Procedural History*

In 1995, the jury found Hernandez guilty of the second degree murder of Torres (Pen. Code,[3] § 187, subd. (a), count 1), the first degree murder of Silva (§ 187, subd. (a), count 2), the willful, deliberate, premeditated attempted murder of Gonzalez (§§ 187, subd. (a) & 664, count 4), and robbery (§ 211, count 5). The jury found true allegations that Hernandez personally used a firearm (§ 12022.5, subd. (a)), personally inflicted great bodily injury (§ 12022.7, subd. (a)), and acted for the benefit of a criminal street gang in commission of the crimes (§ 186.22, subd. (b)). The jury also found true felony murder and multiple murder special circumstances.

---

[3] All future statutory references are to the Penal Code.

5

The trial court sentenced Hernandez to 15 years to life in count 1, plus five years for the firearm use enhancement, plus three years for the gang enhancement. In count 2, the court sentenced Hernandez to life without the possibility of parole, plus five years for the firearm use enhancement, plus three years for the gang enhancement. In count 4, the court sentenced Hernandez to life, plus five years for the firearm use enhancement, plus three years for the great bodily injury enhancement. In count 5, the court imposed the high term of five years, plus five years for the firearm use enhancement, plus three years for the gang enhancement.

In 2024, the People petitioned, pursuant to section 1172.1, to have Hernandez's sentence recalled and for Hernandez to be resentenced. The People requested that Hernandez's conviction for first degree murder in count 2 be reduced to second degree murder and that his sentence in that count be reduced to 15 years to life. The reduction and resentencing would not result in immediate release, but would provide Hernandez an opportunity to obtain parole at some future time. Hernandez filed a motion joining the petition, to which he attached voluminous evidence of his rehabilitation, good behavior, and achievements during the more than 30 years he spent in prison.

At a hearing on the matter, defense counsel argued that Hernandez had been a model prisoner for over 30 years, with no record of discipline while incarcerated. Hernandez also made great efforts at rehabilitation and self-improvement, even without the hope of release.

Hernandez made a statement to the court in which he explained that he began to change his behavior after listening to Silva's mother testify. The grief that she displayed impacted him

and he was overcome with shame.  At that moment Hernandez was able to see "the monster [he] was."  He took full responsibility for the murders and attempted murder and for the pain and trauma he caused the victims' families, friends, and the community.  He decided to change so that he would never hurt anyone again.

Hernandez explained that he denounced all gang ties at that time.  While in custody, he was assaulted three times for cutting ties with his gang, but was not deterred.  He sought help from the church and participated in programs to support his recovery and rehabilitation.  Hernandez worked with youths and helped them to avoid gang participation.  He trained five service dogs for autistic children and wounded veterans.  These activities gave him self-worth and purpose.  Hernandez entered prison with a ninth-grade education and was able to earn associates degrees in sociology and social behavioral science while incarcerated.  At the time of the hearing, he was working on his bachelor's degree in sociology at the University of California Irvine.  Hernandez hoped to use his degree to be a Christian counselor helping to rebuild families.  Hernandez had been incarcerated for over thirty years with no rules violations.  If given the opportunity, he would continue to make amends to the victims' families and serve society.  Hernandez pursued many avenues in an attempt to give letters of remorse to the victims' families, but was prohibited from doing so by law.  In lieu of those apologies he lived his amends by helping others.

The court noted that, according to the People, Hernandez was 21 years old when he committed the crimes.  He had served 31 years in prison at the time of the hearing.  The court stated that it understood it had discretion to reduce the degree of

Hernandez's murder conviction in the interests of justice and understood that there was a presumption in favor of recall and resentencing. However, that presumption could be overcome if Hernandez currently posed an unreasonable risk of danger to public safety. When considering the risk, the court intended to consider the factors set forth in section 1170.18.

The court found that Hernandez's post-conviction rehabilitation efforts supported recall and resentencing. Hernandez had no disciplinary record. He submitted commendations; certificates; educational, vocational, and service achievements; evidence of success in support groups and mentorships; personal statements; and letters of recommendation. Hernandez had no criminal history prior to the commitment offenses, no history of violence after he committed the offenses, and he had maintained sobriety for over 30 years. Hernandez had a very low risk assessment of one out of five. He grew up in an environment of drugs, alcohol, and gangs, and was high on the night he committed the crimes. He showed extreme remorse. If released Hernandez would have family support and had conditional acceptance to a transitional program.

The court found that Hernandez's "rehabilitation efforts, while extensive and commendable, [did] not outweigh the continued risk of danger that [he] pose[d] to . . . public safety." "After considering the horrific nature of the crimes committed by the defendant, the court cannot ignore the callous, cruel, and senseless manner in which the defendant in two separate incidents shot and killed two people, one execution style, and nearly killed a third, done so without any provocation against young men who were unarmed and vulnerable. At least two who were not gang members. And at least one, Julio Silva, was not a

8

gang member, did nothing to provoke the defendant, was ordered by the defendant to kneel down and place his hands behind his head. [¶] He then told him he was going to die and shot him in the head, killing him. There is nothing remote about the timing of the crimes of this case. After killing Torres, defendant and Cota went out later that night and shot and killed Silva and shot Alberto Gonzalez. [¶] While the People and the defendant focus their arguments on the rehabilitation efforts of the defendant, which is appropriate as a factor in this case, neither party addresses how much weight the court should give to the egregious circumstances of [the] killings in determining whether or not the defendant still poses a risk to the public safety." The court found that nothing in the victims' background explained or mitigated Hernandez's actions. The court stated that neither the People nor Hernandez provided evidence that Hernandez would be physically or mentally unable to commit similar violent crimes if released from prison. The court found that Hernandez currently posed an unreasonable risk of danger to society and denied the petition.

Defense counsel argued that Hernandez's criminal record was immutable, and that the parole board had advised against holding the commitment crimes against a defendant forever. The only way that a defendant can show change is through efforts at rehabilitation. Counsel also informed the court that Hernandez had end stage liver disease due to hepatitis, which diminished his physical condition. Counsel strongly disagreed with the court's current unreasonable risk to public safety finding. Counsel argued that most inmates are unable to be nonviolent in prison. Counsel had never seen an inmate with a clean history. The Department of Corrections and Rehabilitation rated Hernandez's

risk as the lowest possible—a "one." For someone with a sentence to life without the possibility of parole that is a nearly impossible score to achieve. Hernandez accrued no points against him while incarcerated. Counsel further argued that the special circumstances alleged were the sole reason for Hernandez's life without the possibility of parole sentence, and those were charged at the sole discretion of the prosecution. The prosecution now believed that it was no longer in the interests of justice, given Hernandez's rehabilitation and his record of 30 years of change. Counsel emphasized that resentencing would not result in Hernandez's release. It would permit him to go before the parole board, which only grants parole in 20 percent of cases. Hernandez would not be released from prison—resentencing would simply be an acknowledgement that the special circumstance imposed was no longer just.

The prosecutor stated that he had been a district attorney for 24 years, in the hardcore gang division for eight years, and in charge of murder resentencing since it commenced in 2019. The prosecutor had handled thousands of murder resentencing petitions and reviewed prison records in those cases. He acknowledged that the crimes were cold-blooded, "[b]ut short of him performing miracles, this is actually the best [prison record] I have ever seen. . . . Mr. Hernandez has done everything someone can do to try to rehabilitate themselves. [¶] And so seeing that and after reviewing so many [prison records] where people have not done a single thing to rehabilitate themselves from the course of 30 years in prison, it does seem like the right thing . . . ."

The trial court did not reconsider its ruling.

10

# DISCUSSION

## A. *Legal Principles*

Section 1172.1 provides, in relevant part, that upon recommendation of the district attorney of the county in which the defendant was sentenced, a trial court "may . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).) Section 1172.1 further authorizes a trial court "in the interest of justice" to "[r]educe a defendant's term of imprisonment by modifying the sentence" and "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense, whether or not that offense was charged in the original pleading, with the concurrence of the defendant, and then resentence the defendant to a reduced term of imprisonment." (§ 1172.1, subd. (a)(3)(A), (B).)

In recalling and resentencing pursuant to this provision, "the court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).) As relevant here,

11

"[t]he court shall consider if the defendant . . . was a youth as defined under subdivision (b) of [s]ection 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (*Ibid*.) Section 1016.7, subdivision (b) defines a youth as "any person under 26 years of age on the date the offense was committed." "The court shall state on the record the reasons for its decision to grant or deny recall and resentencing." (1172.1, subd. (a)(7).)

When a resentencing request is made by a district attorney, "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of [s]ection 1170.18." (§ 1172.1, subd. (b)(2); *People v. Braggs* (2022) 85 Cal.App.5th 809, 818.) Subdivision (c) of section 1170.18 defines an unreasonable risk of danger to public safety as an unreasonable risk that the defendant will commit a super strike offense. (*People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310.)

When considering whether the defendant would pose an unreasonable risk of danger to public safety, the court may consider: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

12

Our review of a trial court's ruling on a section 1172.1 petition is for abuse of discretion.  (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.)  A court abuses its discretion when its ruling "exceeds the bounds of reason, all of the circumstances being considered."  (*People v. Giminez* (1975) 14 Cal.3d 68, 72; accord, *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339 [" ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason" ' "].)

## B.    *Analysis*

Hernandez contends the trial court abused its discretion by relying on a single, static factor—his commitment offenses—and failing to give sufficient weight to the copious evidence of his rehabilitation in prison.  We have carefully considered the record and come to the same view.

The trial court did not explain how the nature of the crimes or the manner in which the crimes were carried out served as indicators that Hernandez posed an unreasonable risk of danger to the public if and when he is later released pursuant to a grant of parole—or if released now, for that matter.  Here, the crimes were very remote, having been committed over 30 years ago.  There was no evidence presented that murder and attempted murder are crimes with high rates of recidivism or that anything about the nature of those offenses suggested a likelihood that Hernandez would reoffend or commit some other super strike offense.  The evidence adduced at trial demonstrated that Hernandez committed the crimes for the benefit of a criminal street gang—a jury found true the gang allegations in all counts.  At the section 1172.1 hearing and in his motion joining the

13

district attorney's recommendation, Hernandez stated that he ended his association with gangs 30 years ago when he realized the magnitude of the suffering that he had caused. There was no evidence that gang participation or any other motivation would cause Hernandez to commit a super strike offense if he was resentenced. To the contrary, the evidence demonstrated that Hernandez had committed to rehabilitating himself and helping others for more than 30 years even when he believed he had no hope of release from prison. Hernandez did not have a history of violence prior to the night of August 10, 1993, and had not engaged in any acts of violence—or indeed any misbehavior in prison—in the more than 30 years since. In sum, none of the evidence the trial court detailed in its ruling supports the conclusion that Hernandez poses a current unreasonable risk of danger to public safety.

Because the court did not rely on evidence tending to show that Hernandez poses a current unreasonable risk of danger to public safety, we reverse the trial court's ruling and remand with directions to grant the District Attorney's petition and resentence Hernandez. In so holding, we do not minimize the callousness or senselessness of the crimes that Hernandez committed. We instead acknowledge that, in light of the copious evidence in the record, Hernandez does not present a current unreasonable risk of danger to public safety.

## DISPOSITION

The trial court's order is reversed and the matter is remanded for recall and resentencing pursuant to section 1172.1 consistent with this opinion.

NOT TO BE PUBLISHED.


                                           MOOR, J.

WE CONCUR:


        BAKER, Acting, P. J.


        KIM (D.), J.